## STATE OF CONNECTICUT *v.* JOHN INGRAM
## (AC 21177)

Spear, Pellegrino and Bishop, Js.[1]

Argued March 26—officially released October 29, 2002

[1] This appeal was argued before a panel comprised of Judges Spear, Pellegrino and Bishop. Although Judge Spear agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that rather than rearguing the appeal to this court with a panel consisting of the original two judges and an additional judge, they would permit the remaining two judges alone to render a written decision.

*Francis L. O'Reilly*, special public defender, for the appellant (defendant).

*Thomas M. DeLillo*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, John Ingram, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[2] He claims that (1) the evidence did not establish his guilt beyond a reasonable doubt and (2) the court improperly instructed the jury on the intent element of the crime.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At some time during the evening of Friday, November 13, 1998, the defendant entered the Kentucky

---

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . ."

[3] At oral argument, the defendant withdrew a third claim that alleged instructional error.

Fried Chicken restaurant on Main Street in New Britain and went into the rest room. The manager, Leon Stewart, locked the doors at approximately 11:30 p.m., not realizing that the defendant was in the rest room. The defendant remained in the restaurant overnight, waiting for it to reopen in the morning.

On Saturday, November 14, 1998, Stewart and his thirteen year old daughter returned to the restaurant at about 7:55 a.m. Once inside the restaurant, Stewart began to cut open a bag of corn muffin mix. As he was doing so, he heard the defendant say, "Don't move." The defendant, with a knife in his hand and wearing a nylon mask over his face, moved toward Stewart. Stewart picked up a muffin tin to protect himself from the defendant, who swung at Stewart with an eight-inch knife. Stewart thrust back at the defendant with the knife that he had used to cut open the corn muffin mix and protected himself with the muffin tin that he had in his other hand. Each man swung or "swiped" at the other two or three times. After several minutes, the defendant ran through the back door of the restaurant, and the police apprehended him a short time thereafter.

I

THE SUFFICIENCY OF THE EVIDENCE

The gist of the defendant's first claim is that the evidence was insufficient for the jury to conclude beyond a reasonable doubt that he had the requisite specific intent to cause another person serious physical injury. Specifically, he claims that because Stewart testified that he and the defendant were at "arm's length" when the defendant swung the knife, the total distance between them would have to have been five feet or more, thereby making it impossible for the defendant actually to have made contact with Stewart. The defendant calculates the distance between the parties by assuming that they confronted each other in a "stiff

arm" fashion. He then adds the eight inch length of the defendant's knife and the length of the muffin tin to the estimated length of the parties' respective arms to arrive at a distance of at least five feet. The defendant then concludes that this "impossibility" would negate the specific intent to cause serious physical injury. In short, the defendant argues that the only reasonable conclusion to be drawn from the evidence is that he was not close enough to cause any injury, let alone serious physical injury, which necessarily negates the specific intent necessary for conviction.

It is well settled that we review challenges to the sufficiency of the evidence in a criminal case by applying a two part test. We first review the evidence "in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom, the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000). We have reviewed the evidence pursuant to that standard and find no such "impossibility," as the defendant posits. To the contrary, the evidence shows that the parties were within one arm's length of each other, and there is no evidence to support a "stiff arm" theory. We conclude that the defendant's claim is devoid of merit.

II

THE JURY INSTRUCTION CLAIM

The defendant next claims that the court improperly instructed the jury on the element of intent. The state concedes that during the beginning of the court's charge, but before the court outlined the essential ele-

ments of each crime charged,[4] the court instructed the jury as follows: "As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct." The defendant claims that this instruction was erroneous and relieved the state of its burden of proving specific intent beyond a reasonable doubt because the jury, rather than finding specific intent to cause the result, simply could have found that he intended to engage in certain conduct. Although the defendant failed to take exception to that charge, the state concedes that we should review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] The claim here is of constitutional magnitude because it is a claim of an improper instruction on an element of the offense, and the record is adequate for review.[6] The state argues, however, that

---

[4] The defendant was charged with and found not guilty of two counts of burglary in the first degree, one count of robbery in the first degree and one count of attempt to commit robbery in the first degree.

[5] held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. (Emphasis in original.) Id., 239–40. "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Jenkins*, 70 Conn. App. 515, 526 n.9, 800 A.2d 1200, cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002).

[6] "Not every improper jury charge . . . results in constitutional error. . . . It is, however, well settled that claims of instructional error as to the essential elements of a crime are constitutional in nature. Claims in this category implicate the possibility of a due process violation affecting the fairness of the trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Westberry*, 68 Conn. App. 622, 635 n.9, 792 A.2d 154, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

on the merits, the defendant has not established that he was clearly deprived of a fair trial because it is not reasonably possible that the jury was misled. We agree with the state.

"[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, it is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Aponte*, 63 Conn. App. 82, 85–86, 774 A.2d 1035 (2001), aff'd, 259 Conn. 512, 790 A.2d 457 (2002).

Here, the only part of the statutory definition of intent that applied was the specific intent necessary for a conviction of attempt to commit assault in the first degree in violation of § 53a-59 (a) (1). Because the statute requires a finding of specific intent to cause a specific result, namely, serious physical injury, the court's charge with respect to the defendant's general intent to engage in conduct was improper. As the state points out, however, the court read the general definition of

intent only at the beginning of its charge and, thereafter, the jury heard the proper definition of the mental state required for the commission of the crime of assault in the first degree several times.[7]

Our careful review of the entire charge persuades us that it is not reasonably possible that the jury was misled when the court instructed on the definition of intent.

[7] The court instructed the jury in relevant part: "Now, in count five, the state had charged another crime in the modality of attempt.

"The charge reads, Scott J. Murphy, state's attorney for the judicial district of New Britain, accuses [the defendant] of the crime of attempt to commit assault in the first degree in violation of Connecticut General Statutes § 53a-59 (a) (1) and alleges that on or about November 14, 1998, at approximately 8 a.m. at Kentucky Fried Chicken, 412 West Main Street, New Britain, Connecticut, the defendant, John Ingram, acting with the kind of mental state required for the commission of the crime of assault in the first degree, intentionally did an act constituting a substantial step in a course of conduct planned to culminate in the commission of the crime of assault in the first degree upon Leon Stewart.

"In this count, the state has also charged [the defendant] with the attempt to commit a crime, attempt to commit assault in the first degree, in violation of § 53a-59 (a) (1) of our statutes.

"The state charges the defendant with the intent to commit that crime. With the intent to commit that crime, he intentionally, under the circumstances, as he believed them to be, took action that was a substantial step in a course of conduct that the defendant had planned to have culminate in his commission of the crime of assault in the first degree in violation of § 53a-59 (a) (1).

"As you have just been instructed for count four, our statute on attempt, General Statutes § 53a-49 (a) (2), as applied here, states [that] a person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally does anything, which under the circumstances, as he believes them to be, is an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"The first element that the state must prove beyond a reasonable doubt, in this count, is that the defendant had the kind of mental state required for the commission of the crime of assault in the first degree, in violation of § 53a-59 (a) (1).

"The intent for that crime is the intent to cause serious physical injury to another person.

"The elements of the crime of assault in the first degree, in violation of § 53a-59 (a) (1) are as follows:

"One, the defendant intended to cause serious physical injury to another person.

We conclude that the instructions were sufficient to convey to the jury the essential meaning of attempt to commit the crime of assault in the first degree and the state's burden to prove beyond a reasonable doubt that the defendant acted with the required specific intent to commit the charged crime. Moreover, any possible risk of jury confusion due to the court's initial instructions on intent was eliminated by the court's later, numerous, proper instructions on the specific intent required to be found guilty of attempt to commit assault in the first degree. Further, considering the strength of the state's case, we cannot conclude that the remarks were substantially prejudicial to the defendant. For those reasons, we conclude that the defendant has failed to demonstrate that a constitutional violation clearly exists that clearly deprived him of a fair trial. Accordingly, his claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.

---

"The defendant caused serious physical injury to that person.

"And, three, that he caused that injury by means of a dangerous instrument.

"Physical injury is defined as impairment of physical condition or pain.

"Serious physical injury, as I've already instructed you, is something more serious than mere physical injury.

"It is more than a minor or superficial injury. It is defined by statute as physical injury that creates a substantial risk of death, or that causes serious disfigurement, serious impairment of health, or serious loss or impairment of the function of any bodily organ.

"Thus, to prove this crime, the state must prove that the defendant intended to cause serious physical injury, as I have defined intent, and serious physical injury for you.

"And, that acting with that intent, the defendant caused serious physical injury to another person."

While deliberating, the jury asked the court to reread its instructions on count five and the charge on intent. The court monitor played back the court's charge on intent and the entire charge on attempt to commit assault in the first degree. Thus, by the time the jury rendered its verdict, it had heard the definition not less than twelve times.